GREENBERG, D. B. A. BERKLEY REALTY CO., ET AL., APPELLANTS,
v. MEYER ET AL., APPELLEES.

[Cite as Greenberg v. Meyer (1977), 50 Ohio App. 2d 381.]

(No. C-75583—Decided January 5, 1977.)

Messrs. *Smith & Schnacke* and Mr. *Leon L. Wolf,* for appellants.

Messrs. *Beirne & Wirthlin* and Mr. *Bernard C. Fox,* for appellees.

*Per Curiam.* This cause came on to be heard upon the appeal; the transcript of the docket, journal entries and original papers from the Court of Common Pleas; and the assignments of error, the briefs and arguments of counsel.

On November 2, 1972, plaintiffs-appellants, duly licensed real estate brokers, entered into a three-month exclusive agency contract with defendants-appellees to sell certain real estate owned by the latter for an agreed com-

mission of seven per cent of the listed selling price of $460,000. Several months thereafter, the sellers accepted an offer, transmitted by the brokers, from a Mr. and Mrs. Eickenhorst to purchase the property for $461,000, and the transaction eventually was set for closing on March 22, 1973.

However, when it became apparent prior to the closing that the purchasers' personal funds, when combined with funds to be obtained from a lending institution and secured by a first mortgage, would be insufficient to pay the agreed purchase price, the brokers, without the knowledge or consent of the sellers whom they represented, agreed to lend the Eickenhorsts the remaining balance of $66,000, secured by a second mortgage and consisting of (a) the $32,270 real estate commission payable by the owners on the sale of the subject property, and (b) loans of $33,730 from the personal funds of two agents of the appellant realty company.

At the March 22 closing, the attorneys for the sellers stated that they would permit neither their prorated share of the real estate taxes nor the real estate commission to be deducted from the proceeds of the sale, indicating their preference to pay the tax bills as they came due and their intention, communicated to the brokers several months earlier, to pay the real estate commission over a five-year period. A heated discussion ensued, following which an attorney for the sellers presented an executed deed to the purchasers, stating that he was prepared to exchange it for $461,000 in cash. When the purchasers failed to produce the requested consideration, all attempts to close the sale were terminated.

The brokers brought this action to recover the real estate commission agreed to in the exclusive agency contract with the sellers, alleging the performance of all services required of them and the wrongful refusal of the owners to both close the sale and pay the claimed commission. All parties filed motions for summary judgment with the trial court, which granted the motion of the defendant sellers and entered judgment thereon.

Of the many issues presented for our consideration on

this appeal, we view one to be central and dispositive. Did the trial court err in determining, as a matter of law, that the brokers had breached a fiduciary duty owed to their principals and, as a consequence, had forfeited their rights to the claimed commission? We hold that it did not. The Ohio courts have long held that a broker who, without the knowledge or consent of his employer, acts for a party whose interests in the transaction are adverse to those of his employer and who thereby breaches or is tempted to breach the duty of loyalty owed to his employer, surrenders his right to any commission which may have been payable as a result of the transaction. *Bell* v. *McConnell* (1881), 37 Ohio St. 396; *Reef* v. *Nagle* (1949), 85 Ohio App. 323; *Cozine* v. *Goodman* (1939), 30 Ohio Law Abs. 703; *Shear* v. *Hartman* (1929), 8 Ohio Laws Abs. 217; *Colley* v. *Sampson* (1927), 5 Ohio Law Abs. 511; *Pagel* v. *Creasy* (1916), 6 Ohio App. 199; *Fred Tuke & Son* v. *Burkhardt* (1958), 80 Ohio Law Abs. 267; *Hughes* v. *Robbins* (1959), 164 N. E. 2d 469. The record in the instant case reflects, in our opinion, the very type of misconduct which the aforementioned rule was intended to discourage. The appellant brokers, by secretly pledging both the sizeable commission due on the sale and a large amount of personal funds to the purchasers in an apparent effort to ensure the consummation of the sale and their eventual remuneration, inextricably entwined their interests with those of the purchasers. The brokers thus placed themselves in a position where, at the very least, they were vulnerable to a temptation to betray the sellers whose interests they had been hired to protect, and are, we conclude, as a matter of law, precluded from recovering any compensation for the effort expended by them in attempting to effect the sale. *Bell* v. *McConnell, supra*; *Hughes* v. *Robbins, supra*; *Fred Tuke & Son* v. *Burkhardt, supra.*[1]

---

[1] The appellants' reliance on this case to support their proposition that a broker engaged in an undisclosed dual agency does not forfeit his right to a commission is misplaced. The court in *Fred Tuke & Son* permitted recovery by a broker who had represented both parties in separate, unrelated transactions, but who did not act as the agent for both parties in the transaction at issue. The court was careful

The appellant brokers protest, however, that the sellers, who were to receive a purchase price in excess of the listed selling price from the sale, have failed to demonstrate any injury occasioned by the brokers' breach of their fiduciary duties, and that, in the absence of such a showing, the sellers may not assert such breach as a defense to the brokers' claims for the real estate commission. We disagree. Based upon considerations of public policy, the rule precluding the recovery of a commission by a broker who has violated his duty of loyalty to his employer was intended not solely to remedy actual wrongs caused by such misconduct, but to discourage the occurrence of such misconduct altogether. Thus, this court has declared that "the rule does not depend upon whether or not the principal is injured by the conduct of the agent. The wholesome rule is that the agent shall not put himself in a position where he may be tempted to betray his principal, or to serve himself at the expense of his principal." *Pagel* v. *Creasy,* *supra* at 206. See *Bell* v. *McConnell, supra*; *Fred Tuke & Son* v. *Burkhardt, supra*; *Hughes* v. *Robbins, supra.*[2]

The authorities cited to us by the appellants as support for their contention that some injury to the employer must be shown before a broker's undisclosed dual agency may be successfully asserted to deprive the latter of his claimed commission are not persuasive. Thus, in *Phillip Metropolitan Colored Methodist Episcopal Church* v. *Wahn-Evans & Co.* (1950), 153 Ohio St. 335, the Supreme Court held that before a surety could be held liable under a real estate broker's bond in which the surety had contracted to indemnify *only those persons damaged* by a failure of the broker to conduct his business in accordance with statutory requirements, the broker's principal must demonstrate some

---

to preserve the distinction between the two types of factual situations, noting that no recovery by the broker would be permitted in the latter.

[2] Numerous other jurisdictions have developed a similar *per se* rule. See, *e. g., Raisin* v. *Clark* (1874), 41 Md. 158; *Rice* v. *Wood* (1873), 113 Mass. 133; *Scribner* v. *Collar* (1879), 40 Mich. 375; *Jensen* v. *Bowen* (1917), 37 N. D. 352, 164 N. W. 4; *Rice* v. *Davis* (1890), 136 Pa. 439, 20 A. 513; *Bell* v. *Routh Robbins Real Estate Corp.* (1966), 206 Va. 853, 147 S. E. 2d 277; *J. C. Penney Co.* v. *Grist* (Tex. Civ. App. 1929), 13 S. W. 2d 936.

actual injury occasioned by the broker's misconduct. The absence of such limited contractual liability in the case *sub judice* and the weighty considerations of public policy underlying the rule prohibiting the undisclosed dual agency of a broker compel our conclusion that the rule announced in *Church* is inapplicable to the case before us.

Our attention also is directed to certain *dicta* contained in an earlier decision of this court, *Mecklenborg* v. *Niehaus* (1948), 85 Ohio App. 271, 274, to the effect that a broker's failure to disclose all material facts surrounding the transaction to his employer would constitute a viable defense to the broker's claim for his commission only if the employer has been damaged by such non-disclosure. However, the *Mecklenborg* court failed to reject or even to acknowledge this court's original determination, announced in *Pagel* v. *Creasy, supra,* and most recently approved by this court in *Fred Tuke & Son* v. *Burkhardt, supra,*[a] that the rule in Ohio absolutely precludes the recovery of a commission by a broker who secretly aligns himself with a party whose interests are adverse to those of his employer, without regard to the fairness of the transaction ultimately effected by the broker. To the extent that the *dicta* in *Mecklenborg* v. *Niehaus, supra,* would, if applied to the facts in this case, produce a result at variance with our determination herein, it is expressly disapproved.

We thus conclude that the trial court did not err in determining, as a matter of law, that the appellant brokers were not entitled to recover the claimed commission from their principals. Since our conclusion therein is sufficient to validate the judgment of the trial court without the necessity of examining arguable error in other predicates suggested by the trial court for its judgment, the appellants' assignments of error are overruled and the judgment is affirmed.

*Judgment affirmed.*

Shannon, P. J., Palmer and Keefe, JJ., concur.

---

[a]The reasoning of the trial court, which recognized that the issue of fairness or reasonableness "is immaterial if a dual agency exists," was expressly approved by this court. *Fred Tuke & Son* v. *Burkhardt* (1958), 80 Ohio Law Abs. 267, 268-69, *aff'd* 109 Ohio App. 183.